IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| DEBORAH A. SIMMONS | ) | C/A No. 6:06-428–CMC–WMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **O R D E R** |
| LINDA S. MCMAHON,[1] Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security Administration (hereinafter "Commissioner"). The matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(B) and the local rules of this court. For the reasons set forth below, the court adopts the Report in part and remands the matter to the Commissioner. The court declines to adopt that portion of the Report which recommends that this court direct the Commissioner, on remand, to assign the matter to a different Administrative Law Judge (ALJ).

## I. STANDARD OF REVIEW

    The Magistrate Judge makes only a recommendation to this court as to dispositive matters. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is

---

[1] McMahon became the Acting Commissioner of Social Security on January 20, 2007. She is, therefore, substituted as the named Defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## II. REPORT AND OBJECTIONS

The Report recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), and that it be remanded for further proceedings consistent with various

2

specific conclusions and instructions. *See* Report at 16 (recommending that ALJ be required to obtain vocational expert testimony because the ALJ's conclusion that Plaintiff suffered only from exertional impairments was not supported by substantial evidence); Report at 17 (recommending that the ALJ be instructed to explain the residual functional capacity findings in accordance with SSR 96-8p); Report at 18-19 (recommending that the ALJ be instructed to consider various factors relevant to evaluation of the treating physician's opinion and "to specifically address the weight given to Dr. Wilson's opinion, to provide an explanation of the specific evidence contradicting th[at] opinion, and to consider the evidence supporting th[at] opinion"); Report at 21 (recommending ALJ be instructed to evaluate Plaintiff's subjective complaints applying the proper two-part test); Report at 22 (recommending the ALJ be instructed, "to consider the limitations and restrictions imposed by all of the plaintiff's impairments, including those that are not severe"). In addition, the Report recommended that, upon remand, a different ALJ be assigned to the matter. Report at 14.

The Commissioner objects on two grounds. First, she objects to any directive that the matter be reassigned to a different ALJ. Second, she objects to the recommendation that the matter be remanded. The latter objection rests on arguments that the ALJ conducted a proper credibility analysis and that her ultimate conclusion was supported by substantial evidence.

### III. DISCUSSION

**A.     Assignment of ALJ**

"To whom a case should be remanded is generally within the province of the [Commissioner's] responsibility." *Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir. 1993) (finding district court exceeded its authority by ordering a new ALJ take over the case on remand). The reviewing court may not intervene in that decision absent proof of bias or partiality. *Id. See also Schweiker v. McClure,* 456 U.S. 188, 195-96 (1982) (noting that administrative hearing officers are

3

entitled to a presumption that they are unbiased absent proof to the contrary, such as by showing a conflict of interest, and that the burden of proof rests on the party seeking to disqualify the hearing officer).

The administrative record in this case, most particularly the transcript of the hearing before the ALJ, suggests that the ALJ may have entered the hearing with a preconceived opinion of Plaintiff's credibility and serious doubts as to her degree of disability. The transcript also suggests the ALJ maintained a somewhat adversarial tone throughout the hearing.

It is at least reasonable to assume that the ALJ's approach to the hearing contributed to her erroneous conclusion as to the source of a shoulder injury which Plaintiff suffered in September 2004. That conclusion, in turn, was one basis for the ALJ's determination that Plaintiff was less than credible. Thus, the alleged bias does not appear to have been harmless.

On the other hand, there is no suggestion or evidence that the bias had either an impermissible or extrajudicial basis. Rather, the evidence suggests that the ALJ was influenced only by her pre-hearing review of the extensive record. There is, moreover, no reason to believe that the this same ALJ would not carefully apply this court's directives on remand.

The court, therefore concludes that the ALJ's comments at the outset of the hearing and tone during the hearing do not provide an adequate basis for disqualification of the ALJ from further consideration of this matter on remand.

**B.     Credibility Determination**

The ALJ erred in concluding that Plaintiff's September 2004 shoulder injury resulted from Plaintiff's participation in a sporting activity (a game of dodge or kick ball). Both the underlying medical record and Plaintiff's testimony support the conclusion that Plaintiff was injured while

4

observing others who were engaged in the sport. Tr. 483 (record appears to read "hit [left] shoulder by individual catching a dodge ball"). There is no evidence to the contrary.

The ALJ's credibility determination rested, in part, on the unsupported conclusion that Plaintiff had been engaged in a game of dodge ball when she was injured in September 2004. *See* Tr. at 19 (noting "The activity of catching a dodge ball is inconsistent with the claimant's allegations of disabling pain and other alleged symptoms."). Thus, the factual error as to the cause of the injury may have contributed to the more critical credibility determination. In addition, as explained in the Report, the ALJ's credibility findings as to pain failed to adequately address the necessary steps. Thus, the ALJ's credibility determination cannot stand as presently written.

This is not to suggest that the ALJ must necessarily reach a different credibility determination on remand. There is, as the Commissioner notes, evidence from which a reasonable person might draw negative inferences as to Plaintiff's credibility. For example, Plaintiff's own treating physician noted inconsistent test results which may suggest malingering. *E.g.*, Tr 607-08 (August 19, 2004 record noting Plaintiff had "inconsistent" neurological examination including that "Pt reported decreased sensation to light touch and then stated that there was no feeling in the same areas a few minutes later," as well as that her "reflexes were 2+ while distracting pt and then unable to elicit when pt watching"). There is also evidence from which one might conclude that Plaintiff claims to have suffered from conditions which are not supported by medical findings. *E.g.,* Tr. at 607 (discussing Plaintiff's claim to have suffered from a stroke in July 2004 but apparently inconsistent record of related hospitalization which found "no signs of stroke").[2] At the same time, there is

---

[2] There is some debate as to whether Plaintiff actually suffered a stroke and, if so, the degree of residual disability she may have suffered as a result. For example, Plaintiff's treating physician, Dr. Michelle Wilson, opined in July 2005 that Plaintiff was disabled "due to her multiple medical problems as well as stroke one year ago." Tr. 611 (medical source statement written July 11, 2005).

evidence that Plaintiff suffered (or may have suffered) from psychiatric difficulties which may explain any apparent inconsistencies without reflecting on Plaintiff's credibility or ultimate disability. All such matters are for consideration by the Commissioner on remand.

### C.     Other Recommendations

The Commissioner does not expressly challenge any other recommendations in the Report which includes various recommendations that this court require the Commissioner to apply specific factors and standards in the decision on remand. Finding no clear error in the unchallenged recommendations, the court adopts them.

### IV. CONCLUSION

For the reasons set forth above, this court adopts the Report and Recommendation of the Magistrate Judge except as to the recommendation that this court dictate that the matter be reassigned to a different ALJ on remand. With this exception, the matter is remanded for further proceedings applying the standards and factors as set forth in the Report and Recommendation.

IT IS SO ORDERED.

                                           s/ Cameron McGowan Currie
                                           CAMERON MCGOWAN CURRIE
                                           UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 7, 2007

---

A different physician in the same practice apparently prepared the August 2004 report (quoted in the text) which noted that no "signs of stroke" were found during Plaintiff's July 2004 hospitalization. Intervening records from the same practice refer to Plaintiff having suffered a stroke in July 2004 and indicate that she was receiving speech therapy as a result. *See also* Tr. 463 (July 2004 hospital record noting Plaintiff was admitted for "possible CVA" but "Neurology . . . felt the patient's symptoms were not representative of an ischemic event," "Psychiatry . . . felt the patient did not have conversion disorder," and on discharge, no specific etiology had been identified for Plaintiff's symptoms, which resolved during hospitalization except for some slurring of speech).